IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY B. ISRAEL, | ) | CASE NO.: 5:10-CR-00347 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO PETITIONER'S |
| Respondent. | ) | MOTION TO VACATE PURSUANT TO |
| | | 28 U.S.C. § 2255 |

The Respondent, United States of America, by and through its counsel, Steven M.

Dettelbach, United States Attorney, Carol M. Skutnik and Brian M. McDonough, Assistant

United States Attorneys, hereby opposes Petitioner's Motion to Vacate, Set Aside or Correct

Sentence pursuant to Title 28, United States Code, § 2255. Petitioner's *pro se* motion claims he

received ineffective assistance of counsel. As set forth below in the attached response,

Petitioner's *pro se* motion is without merit and should be denied without a hearing.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:   s/Carol M. Skutnik
Carol M. Skutnik (OH: 0059704)
Brian M. McDonough (OH: 00672954)
Assistant United States Attorneys
United States Court House
801 W. Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3785/ (216) 622-3965
(216) 522-8354 (facsimile)
Carol.Skutnik@usdoj.gov
Brian.McDonough@usdoj.gov

i

## TABLE OF CONTENTS

STATEMENT OF THE CASE......................................................................................................1

STATEMENT OF THE FACTS ...............................................................................................3

ARGUMENT ..........................................................................................................................9

I.      ISRAEL'S § 2255 MOTION TO VACATE MAY ONLY PROCEED ON
        LIMITED GROUNDS...................................................................................................9

II.     ISRAEL CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF
        COUNSEL UNLESS HE ESTABLISHES BOTH THAT HIS ATTORNEY'S
        PERFORMANCE WAS DEFICIENT AND THAT IT PREJUDICED HIS
        DEFENSE...................................................................................................................15

CONCLUSION......................................................................................................................19

ii

## TABLE OF AUTHORITIES

**CASES**

Arredondo v. United States,
  178 F.3d 778 (6th Cir. 1999) ........................................................................................19

Drope v. Missouri,
  420 U.S. 162 (1975)......................................................................................................11

Green v. United States,
  65 F.3d 546 (6th Cir. 1995) ..........................................................................................19

Hill v. United States,
  368 U.S. 424, (1962)........................................................................................................9

Lewis v. Alexander,
  11 F.3d 1349 (6th Cir. 1993) .........................................................................................17

Mackey v. Dutton,
  217 F.3d 399 (6th Cir. 2000) cert. denied, 531 U.S. 1087,
  (2001).............................................................................................................................11

Owens v. Sowders,
  661 F.2d 584 (6th Cir. 1981) .........................................................................................10

Popovich v. Cuyahoga Cnty. Court of Common Pleas, Domestic
  Relations Div.,
  276 F.3d 808 (6th Cir. 2002) .........................................................................................18

Pough v. United States,
  442 F.3d 959 (6th Cir. 2006) .........................................................................................18

Ross v. United States,
  339 F.3d 483 (6th Cir. 2003) .........................................................................................19

Stone v. Powell,
  428 U.S. 465, (1976)......................................................................................................10

Strickland v. Washington,
  466 U.S. 668, (1984)......................................................................................15, 17, 18, 19

U. S. v. Frady,
  456 U.S. 152, (1982)......................................................................................................10

iii

United States v. Ferguson,
    918 F.2d 627 (6th Cir. 1990) ........................................................................9

United States v. Layne,
    192 F.3d 556 (6th Cir. 1999) ...............................................................18, 19

United States v. Sandridge,
    385 F.3d 1032 (6th Cir. 2004) ...................................................................18

Valentine v. United States,
    488 F.3d 325 (6th Cir. 2007) .....................................................................19

Watson v. United States,
    165 F.3d 486 (6th Cir. 1999) .......................................................................9

Williams v. Bordenkircher,
    696 F.2d 464 (6th Cir. 1983) .....................................................................10

Wright v. United States,
    624 F.2d 557 (5th Cir. 1980) .......................................................................9

**STATUTES**

18 U.S.C. § 4241 ...................................................................................................3

28 U.S.C. § 2255 ................................................................................1, 2, 9, 19, 21

**RULES**

U.S.S.G. § 2G2.1(b)(1) .........................................................................................7

U.S.S.G. § 2G2.1(b)(2)(A) ....................................................................................7

U.S.S.G. § 2G2.1(b)(3) .........................................................................................7

U.S.S.G. § 2G2.1(b)(4) .........................................................................................7

U.S.S.G. § 2G2.1(b)(5) .........................................................................................7

U.S.S.G. § 4G1.5(b)(1) .........................................................................................7

1

## <u>STATEMENT OF THE CASE</u>

On August 18, 2010, a grand jury indicted Timothy B. Israel for three child pornography counts:  one count of receiving visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Count 1); one count of distributing visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Count 2); and one count of producing child pornography, in violation of 18 U.S.C. § 2251(a) (Count 3). (R. 1: Indictment, PageID 1-2).  The Court appointed attorney Neal G. Atway to represent Israel. (Minutes of Proceedings, 9/14/2010).  Pursuant to 18 U.S.C. § 4241, Atway requested a competency evaluation for Israel, which the Court granted. (R. 12: Motion for Psychiatric Exam, PageID 31-32 and R. 13: Order on Motion for Psychiatric Exam, PageID 34-35). To complete the competency evaluation, Israel was transported to the Federal Medical Center at Lexington, KY, where he was observed for 47 days. (R. 14: Writ of Habeas Corpus ad Prosequendum Executed, PageID 36 and R. 16: Sealed Document).  Forensic psychologist Dr. Betsy Campbell, Ph.D. authored Israel's forensic report and opined that Israel was <u>not</u> suffering from a mental disease or defect and <u>was</u> competent to stand trial.[1] (R. 16: Sealed Document).  Israel and the government stipulated to Dr. Campbell's forensic report.  (Minutes of Proceedings, 3/29/2011). The Magistrate Judge found Israel to be competent. (R. 20: Report and Recommendation, PageID 52-53).  Israel pleaded guilty to all counts, pursuant to a plea agreement, on March 29, 2011. (Minutes of Proceedings, 3/29/2011).  On April 26, 2011, the Court accepted the report and recommendation of the Magistrate Judge finding that based on a de novo view of the record,

---

[1] Dr. Campbell also diagnosed Israel with Pedophilia and Malingering. (R. 16: Sealed Document).

2

Israel was competent to enter a plea, that Israel understood his constitutional rights, that Israel was aware of the charges and the consequences of entering a plea, that there was a factual basis for the plea, and that Israel's plea was entered into knowingly, intelligently, and voluntarily. (R. 24: Order Adopting Report and Recommendation Finding Mental Competency, PageID 88-89 and R. 25: Order Allowing Plea Agreement, PageID 91).

On November 8, 2011, this Court sentenced Israel to 240 months imprisonment on Counts 1 and 2, to be served consecutively to each other and to a sentence of 360 months imprisonment on Count 3, for a cumulative total sentence of 840 months imprisonment. (R. 30: Judgment, PageID 113). Israel also received lifetime supervised release on all counts, to run concurrently, and was ordered to pay a $300 special assessment. (Id., PageID 114, 117). Israel filed his notice of appeal on November 14, 2011. (R. 31: Notice of Appeal, PageID 120-121). On September 19, 2012, the Unites States Sixth Circuit of Appeals affirmed the judgment of this Court. (R. 36: USCA Information Copy, PageID 153). On January 23, 2013, the United States Supreme Court denied Israel's petition for a writ of certiorari. (R. 39: USCA Information Copy, PageID156). On January 31, 2014, Israel, *pro se*, filed a Motion to Vacate under 28 U.S.C. § 2255. (R. 40: 2255 Motion, PageID 165-174).

3

## STATEMENT OF THE FACTS

**A.    Israel's Competency**

On October 21, 2010, Israel's counsel, Atway filed a motion for a competency evaluation which was unopposed by the government and granted by this Court under 18 U.S.C. § 4241. (R. 12: Motion for Psychiatric Exam, PageID 31-32 and R. 13: Order on Motion for Psychiatric Exam, PageID 34-35).  On December 9, 2010, Israel was transported to FMC Lexington for the competency evaluation. (R. 14: Writ of Habeas Corpus ad Prosequendum Executed, PageID 36).

Dr. Betsy Campbell, Ph.D., a forensic psychologist, conducted the competency evaluation. (R. 16: Sealed Document).  Prior to the initial interview, Dr. Campbell advised Israel of the purpose of the evaluation, that the information obtained from him would not be confidential, and that a report would be submitted to the court. Id.  Israel indicated he understood and agreed to the evaluation.  Israel was evaluated from November 18, 2010 through January 3, 2011. Id.  Israel was administered the Weschler Adult Intelligence Scale, Fourth Edition (WAIS-IV), scoring 100, which is considered average with most people scoring between 85 and 115. Id.

 On the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), validity indicators suggested that Israel responded in an exaggerated manner claiming many more psychological symptoms than most patients do.  Israel's overall responses suggested that he was exaggerating his symptoms to gain attention. Id.

To assess Israel's symptom presentation, he was administered the Structured Inventory of Malingered Symptomatology. Id.  This screening instrument found that Israel endorsed a high number of atypical, improbable, inconsistent, or illogical symptoms. Id.  Overall his personality testing indicated he was attempting to malinger mental illness. Id.

4

Israel also completed a personal history questionnaire and competency related questions. Id. The results of Israel's psychological testing and interviews did not support a finding of severe mental illness or cognitive limitations but did indicate that Israel was attempting to feign or malinger psychiatric impairment. Id. Israel's answers suggested a sophisticated understanding of the judicial system, the various legal proceedings, and the criminal allegations against him. Id. His verbal abilities demonstrated during competency related questioning suggested that he had sufficient intellectual abilities to proceed competently. Id.

Israel was previously found competent on December 2, 2009, in State v. Timothy B. Israel, Stark County Common Pleas Court Case No. 2009-CR-1376. (Presentence Investigation Report ("PSR") at ¶ 46). In that case, Israel was charged with Gross Sexual Imposition F3 and was referred for a competency evaluation, after which the court found Israel competent. Id.

In the present case, Dr. Campbell's forensic report was filed with this Court under seal on February 1, 2011. Id. On March 29, 2011, Israel and the government stipulated to the findings of the forensic report of the competency evaluation before the Magistrate Judge who conducted the guilty plea hearing with the consent of the parties. (R. 21: Consent to Order of Referral to Magistrate Judge for Purposes of Receiving Defendant's Guilty Plea, PageID 54-55).

**B.      Israel's Plea Agreement**

As part of the factual basis for his guilty pleas, Israel agreed in a written plea agreement that between the dates of April 19, 2008, and August 20, 2009, Israel stayed with the family of A.C. (a three-year-old female), and would frequently babysit for A.C. and her infant sister K.C. During this time, Israel produced several digital photographs of A.C. and K.C. and Polaroid photographs of A.C. depicting sexual intercourse, masturbation and the lascivious exhibition of

5

the genitals or pubic area of the girls. (R. 26: Plea Agreement).  The visual depictions were taken with cameras that were manufactured outside of the State of Ohio. Id.  Between the dates of November 4, 2008, and July 17, 2009, Israel used his America Online and Yahoo! email accounts to distribute via the internet the visual depictions of A.C. described herein, as well as visual depictions of unidentified minors engaged in sexually explicit conduct, to other child pornography consumers. Id.  In addition, between the dates of December 31, 2007, through August 20, 2009, Israel received through his America Online and Yahoo! email accounts numerous visual depictions of minors engaged in sexually explicit activity with knowledge of the nature of the material he was receiving. Id.  These events all occurred in the Northern District of Ohio. Id.

According to the PSR, Israel came to the attention of federal law enforcement when eleven Polaroid photographs of A.C. were found inside a duffle bag at a Goodwill store, along with a letter addressed to Israel. (PSR at ¶ 7).  When questioned about the pornographic images of A.C., Israel admitted to FBI agents that he made 51 images, most of which were taken with his cell phone. (PSR at ¶ 12).  Israel forwarded those images from his cell phone to his email accounts. Id.  He admitted taking lascivious photographs of A.C. from three years of age until nearly her fifth birthday and stated he took one video of A.C. performing oral sex on him using her parents' web camera. Id.  Israel admitted that he also used his sister's video camera to take a video of A.C., but the video was never recovered. Id.  The photos of A.C. that Israel distributed over the internet included depictions of A.C. performing oral sex on Israel, Israel's fingers on A.C.'s vagina, a purple vibrator inserted in A.C.'s vagina, and a photograph of A.C.'s chest covered with an opaque shiny liquid. (PSR at ¶ 13).  Israel stated that he "took nude pictures of

6

[A.C.] and sent the pictures of the internet to get pictures of other guys kids." (PSR at ¶ 11). There were also four photographs of K.C.'s vagina in Israel's email account, labeled with her first name. (PSR at ¶ 14).

Israel was previously arrested in connection with a state court sex offense[2] involving A.C., wherein he admitted to touching her vagina. (PSR at ¶ 46).  Before to sentencing in the state case, Israel provided an eighteen-page letter to the interviewing officer of the Ohio State Adult Parole Authority ("APA"), stating he had his first sexual contact with A.C. in a restroom when she was two-years-old. (PSR at ¶ 15).  Israel stated that he formed the idea in his head that he "wanted to taste her" so he spread her legs and licked her vaginal area. Id.  Israel described it in his letter as "so good" and "so sweet" and noted that he did it two more times before her third birthday. (PSR at ¶ 9).

In his Sex Offender Assessment, Israel admitted licking and touching A.C.'s body, inserting a vibrator and his fingers in her vagina, and inserting his penis in her mouth about ten times. (PSR at ¶ 10). When describing the digital penetration, Israel stated that A.C. cried screamed and fought him, which made him push his pinky in further.  Israel also reported inserting his finger in A.C.'s rectum a few times. Id.  Israel further concluded that "if we was still at it we probably have done sexual intercourse when she was 7 or 8 at the earliest." (PSR at ¶ 11).

Israel further stated in his letter to the APA and during his Sex Offender Assessment that a third minor victim, seven years old, once grabbed him, threw him down on the couch, and

---

[2] State v. Timothy B. Israel, Stark County Common Pleas Court Case No. 2009-CR-1376.

7

kissed him. (PSR at ¶15).  He noted the kissing "turned him on", it went on for hours, and that he was "rock hard".  Id.  Israel also described contact with a four-year-old female niece while she was naked, following a bath.  He stated she blew into his ear, "turning him on and getting him rock hard." Id.

**C.      Israel's Sentencing**

At sentencing, this Court set Israel's base offense level at 32.  (R. 35: Transcript – Appeal, PageID 130).  This court then applied several upward adjustments, including:

(1) four levels because "the offense involved a minor who had not attained the age of 12 years," under U.S.S.G. § 2G2.1(b)(1), (R. 35: Transcript – Appeal, PageID 130);

(2) two levels because the offense involved the commission of a sexual act under U.S.S.G. § 2G2.1(b)(2)(A), (R. 35: Transcript – Appeal, PageID 130);

(3) two levels because the defendant "distributed visual depictions of minors in sexually explicit conduct ," under U.S.S.G. § 2G2.1(b)(3), (R. 35: Transcript – Appeal, PageID 130);

(4) four levels because "the offense involved images of prepubescent children being penetrated and indications, as well, of other masochistic conduct or sadistic conduct," under U.S.S.G. § 2G2.1(b)(4), (R. 35: Transcript – Appeal, PageID 130);

(5) two levels because "the minor involved in these offenses had been left to the care, custody, or supervisory control [of the defendant] during the course of the offense," under U.S.S.G. § 2G2.1(b)(5), (R. 35: Transcript – Appeal, PageID 130); and

(6) five levels because "the defendant engaged in a pattern of activity involving prohibited sexual conduct," under U.S.S.G. § 4G1.5(b)(1), (R. 35: Transcript – Appeal, PageID 130-131).

Based on a three-level reduction for acceptance of responsibility, the Court concluded that Israel had a total offense level of 46, Criminal History Category  II, yielding an advisory Guidelines range of life imprisonment.  (R. 35: Transcript – Appeal, PageID 131, 143).  Israel

8

did not object to the Guidelines calculations as contained in the presentence report, nor as adopted by the Court at the time of sentencing.  ((PSR at p. 24); R. 35: Transcript – Appeal, PageID 129-130).  As previously stated, this Court sentenced Israel to a total of 840 months imprisonment. (R. 30: Judgment, PageID 113).

9

## ARGUMENT

**I.     ISRAEL'S § 2255 MOTION TO VACATE MAY ONLY PROCEED ON LIMITED GROUNDS.**

Title 28, United States Code, § 2255, provides a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he alleges violates federal law.  § 2255 sets forth the four grounds upon which a federal prisoner may base a claim for relief: "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'"  Hill v. United States, 368 U.S. 424, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962), 426-27 (1962).

**A.     Standard of Review**

To prevail on a 28 U.S.C.A. § 2255 motion alleging a constitutional error, the petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999). The petitioner must prove by a preponderance of the evidence that his constitutional rights were denied or infringed.  Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980).

To prevail on a 28 U.S.C.A. § 2255 alleging a non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process."  United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990) (citing Hill, 368 U.S. at 428).

It is well settled that a proper § 2255 motion does not reach alleged errors that are not of a constitutional or jurisdictional magnitude and that could have been reached by a direct appeal.

10

Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), 477 (1976).  To "obtain

collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct

appeal."  U. S. v. Frady, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982), 166 (1982).

"Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled

to presume he stands fairly and finally convicted."  Id. at 164.

     Israel claims three errors.  First, Israel claims that he was not competent to intelligently

plead guilty.  Second, Israel claims that his 5th Amendment right against self-incrimination was

violated during his competency evaluation.  Third, Israel claims his counsel was constitutionally

deficient for stipulating to Dr. Campbell's forensic report and not obtaining a second competency

evaluation; for failing to move to suppress Israel's statements during the competency evaluation;

and for failing to investigate the case.  Israel's claims are all meritless.  This Court should find

that an evidentiary hearing is not required and that each of Israel's claims fails.

**B.**    **ISRAEL WAS COMPETENT TO INTELLIGENTLY PLEAD GUILTY.**

     The test to determine a defendant's competency to enter a guilty plea is whether he "has

sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding-and whether he has a rational as well as factual understanding of the proceedings

against him." Williams v. Bordenkircher, 696 F.2d 464 (6th Cir. 1983), 466 (6th Cir.1983)

(citation and internal quotation marks omitted). " '[E]vidence of a defendant's irrational

behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all

relevant in determining whether further inquiry is required...." Owens v. Sowders, 661 F.2d 584

(6th Cir. 1981), 586 (6th Cir.1981) (quoting Drope v. Missouri, 420 U.S. 162, 95 S. Ct. 896, 43

L. Ed. 2d 103 (1975), 180, (1975)).

11

A court's determination of competency is a factual finding entitled to a presumption of correctness, and can only be refuted by clear and convincing evidence. Mackey v. Dutton, 217 F.3d 399 (6th Cir. 2000), 413 (6th Cir.2000), cert. denied, 531 U.S. 1087, (2001).

In the present case, after a 47-day period of evaluation, testing, and observation, Dr. Campbell concluded that Israel was competent to stand trial.  Defense counsel and the government stipulated to Dr. Campbell's opinion.  The Magistrate Judge found defendant to be competent, just as a state court previously found Israel competent on December 2, 2009, in State v. Timothy B. Israel, Stark County Common Pleas Court Case No. 2009-CR-1376. (PSR at ¶ 46).  In that case, Israel was charged with Gross Sexual Imposition F3 and was referred for a competency evaluation, after which the court found Israel competent. Id.

In the present case, before accepting the stipulation of to Dr. Campbell's forensic report regarding competency, the Magistrate Judge inquired of Israel's counsel and Israel regarding the stipulation:

"MR. ATWAY:  I've had the opportunity to review this report at length with Mr. Israel, and he does concur with its findings and stipulates to the finding that he is competent to stand trial. The report that I am referring to is that same report that is dated January 28, 011, and prepared by Dr. Judith Campbell, the forensic psychologist at FMC Lexington.

THE COURT: Mr. Israel, did you hear everything that was said?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you agree with that? You understand that your counsel has just said that you are going to stipulate to the report and agree that you are competent to proceed. Do you understand all that?

12

THE DEFENDANT: Yes, ma'am."

(R. 23: Transcript – Official Court Transcript of Guilty Plea before Magistrate Judge, PageID 61).

Although the Magistrate Judge noted that Dr. Campbell's forensic report noted some issues, there were no mental conditions that would prevent Israel from proceeding competently to trial; Israel evidenced no real confusion about his legal situation; Israel did not appear to be suffering from a mental disease or defect which would prevent him for proceeding competently to trial; Israel displayed a factual understanding of the proceedings against him; and Israel demonstrated sufficient present ability to consult with an attorney with a reasonable degree of rational understanding. (Id., PageID 62).  In summary, the Magistrate Judge found Israel competent to stand trial as Israel was able to understand the nature and consequences of the proceeding against him and was able to properly assist in his defense. (Id.)

The Magistrate Judge then conducted a plea colloquy in which Israel acknowledged reading, consulting with counsel, signing, and desiring to proceed with the consent order of referral to the Magistrate Judge for purposes of his plea, without any threats or promises for his consent. (Id., PageID 64). Israel acknowledged that he was not under the influence of any drugs or medications that would interfere with his ability to think or understand; that he had understood everything that his counsel has said to him that day and over the past few days; that he was a high school graduate with the ability to read; and that he reviewed every page of his plea agreement, understood it and initialed each page of it. (Id., PageID 65-68).

The Magistrate Judge engaged in the following colloquy with Israel:

13

"THE COURT: I am going to go over your rights with you and everything in the plea

agreement. … If you have any questions whatsoever about anything I say, let me know

and we'll make sure that you understand. It is important you understand all of the

consequences of the plea and all of the factual bases for the plea and everything that we're

talking about with regard to the plea. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: So, don't hesitate to ask if you have a question or if there is anything you

want clarified or if there is anything you want on the record, okay?

THE DEFENDANT: Okay.

THE COURT: And also, if you need time during any particular issue that we are

discussing to talk with Mr. Atway, let me know and I will give you whatever time you

need. Okay?

THE DEFENDANT: Okay."

(Id., PageID 67-68).

Israel further acknowledged that he reviewed and understood the charges and the

elements of the charges as well as the maximum penalties, and the mandatory minimum sentence

with his counsel; and that he understood the sentencing guideline range and the sentencing

discretion of the Court. (Id., PageID 72-78).

To confirm Israel's plea of guilty was knowing, intelligent and voluntary, the Magistrate

Judge asked:

"THE COURT: Is your offer to plead guilty being made because you are in fact guilty of

Counts 1, 2, and 3?

14

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Now, I'm going to ask you, do you acknowledge that your offer

to plead guilty is freely and voluntarily made, and that no threats, promises or

representations have been made nor agreements reached other than those set forth in this

document captioned "Plea Agreement" to induce you to plead guilty?

THE DEFENDANT: Yes, ma'am."

(Id., PageID 80).

Lastly, to confirm that Israel was fully satisfied with the advice, effort, assistance and

counsel provided by Mr. Atway to Israel, the Magistrate Judge asked Israel:

"THE COURT: Okay. Do you acknowledge that you have discussed this case with your

attorney in detail and have been advised by your attorney of your constitutional and other

rights of an accused, the factual basis for and the nature of the offense to which the guilty

plea will be entered, the possible defenses and consequences of the guilty plea, including

sentencing ramifications?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you declare that you are fully satisfied with the effort, assistance and

counsel provided by your attorney?

THE DEFENDANT: Yes, ma'am."

(Id., PageID 81-82).

No doubts or objections were raised about Israel's answers to the Magistrate Judge's

questions, Israel's understanding of his constitutional rights and the rights that he waived by

pleading guilty, Israel's understanding of the consequences of his plea and the mandatory

15

sentences he faced.  Moreover, no doubts or objections were raised as to Israel's ability to

consult with his counsel and to understand the proceedings against him.

Israel has failed to show that the Court ignored facts that raised a bona fide doubt

regarding Israel's competency to intelligently enter a guilty plea.  Israel has also failed to raise

facts or present evidence with his motion that create a real, substantial, and legitimate doubt as to

his competency to intelligently enter a guilty plea.  Accordingly, this Court should find that

Israel is not entitled to § 2255 relief on Israel's competence claim.

**II.     ISRAEL CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL UNLESS HE ESTABLISHES BOTH THAT HIS ATTORNEY'S PERFORMANCE WAS DEFICIENT AND THAT IT PREJUDICED HIS DEFENSE.**

**A.     <u>Standard of Review</u>**

A defendant seeking to establish ineffective assistance of counsel must satisfy the

standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984)(1984), where the Supreme Court formulated the following test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Unless a defendant makes both showings,
> it cannot be said that the conviction or death sentence resulted
> from a breakdown in the adversary process that renders the result
> unreliable.

<u>Id.</u> at 687.

Israel claims that his counsel was constitutionally deficient for stipulating to Dr.

Campbell's forensic report.  In order for Israel to obtain relief, Israel must prove that his counsel

16

was deficient and that the deficient performance prejudiced Israel.  Israel offers no evidence that his counsel was deficient or that Israel was prejudiced.

Had Israel's counsel not stipulated to the competency evaluation, the government would have offered the testimony of Dr. Campbell and the report would have been admitted.  Israel offers no evidence that having Dr. Campbell testify would have changed the Court's decision. Thus, there is no deficiency by Israel's counsel stipulating to the report and Israel was not prejudiced.

Israel's claim that his counsel should have filed a motion to suppress Israel's statements during the competency evaluation is also meritless.  Israel's statements were not used against him in violation of his Fifth Amendment privilege against self-incrimination.  Israel's counsel was not deficient in requesting the competency evaluation.  Israel has not shown that he was prejudiced.

Lastly, Israel claims that his counsel was deficient for not investigating the case.  This claim is meritless.

The record shows that Israel's counsel sought and obtained a competency evaluation for Israel based on Israel's mental health history.  Israel's counsel filed for and received discovery from the government.   Israel's counsel negotiated and obtained a plea agreement for Israel that did not waive Israel's appellate rights.  Israel's also filed a sentencing memorandum and argued for leniency for Israel at sentencing.  Israel cannot show that his counsel was deficient nor can Israel show that he was prejudiced.

17

**B.     COUNSEL'S PERFORMANCE IS NOT DEFICIENT UNLESS IT     FALLS BELOW AN OBJECTIVE STANDARD OF REASONABLENESS AND IT IS PRESUMED TO HAVE BEEN ADEQUATELY RENDERED.**

In attempting to establish that an attorney's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The performance inquiry must consider the prevailing circumstances at the time of trial and should not be conducted in a vacuum.  Id. at 688.

Judicial scrutiny of counsel's performance "must be highly deferential." Id. at 689.  A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.  Indeed, the Sixth Circuit has recognized the necessity of affording defense counsel wide latitude in making trial decisions.  "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." Lewis v. Alexander, 11 F.3d 1349 (6th Cir. 1993), 1353-54 (6th Cir. 1993).

Further, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689(citations omitted).  The reviewing court is also required to recognize that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Israel was afforded effective assistance of counsel because his attorney's performance did not fall below the "objective standard of reasonableness" called for in Strickland.  Israel offers

18

little to nothing in support of his claims of ineffective assistance of counsel, thus, he fails to

show by a preponderance of the evidence that his constitutional rights were violated or infringed.

See <u>Pough v. United States</u>, 442 F.3d 959 (6th Cir. 2006), 964 (6th Cir. 2006).  Israel has failed

to include any analysis, authority, relevant citation to the record, or discussion to support his

allegations.  See <u>United States v. Sandridge</u>, 385 F.3d 1032 (6th Cir. 2004), 1035-36 (6th Cir.

2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.  It is not sufficient for a party to mention a possible

argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (quoting

<u>Popovich v. Cuyahoga Cnty. Court of Common Pleas, Domestic Relations Div.</u>, 276 F.3d 808

(6th Cir. 2002), 823 (6th Cir. 2002)); <u>United States v. Layne</u>, 192 F.3d 556, 566-67 (6th Cir.

1999)..

**C.      TO SET ASIDE A CONVICTION, A PROFESSIONALLY UNREASONABLE
ERROR MUST ALSO PREJUDICE THE DEFENSE SUCH THAT, BUT FOR
COUNSEL'S ERROR, THE RESULT OF THE PROCEEDING WOULD HAVE
BEEN DIFFERENT.**

An error by counsel, "even if professionally unreasonable, does not warrant setting aside

the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Id.</u> at 691.

Deficiencies in counsel's performance must instead "be prejudicial to the defense in order to

constitute ineffective assistance under the Constitution."  <u>Id.</u> at 692.  It is not enough for the

defendant to show "that the errors had some conceivable effect on the outcome of the

proceeding" as virtually "every act or omission of counsel would meet this test."  <u>Id.</u> at 693.  To

establish prejudice, the "defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at

19

694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

Atway's representation of Israel was neither unreasonable nor constitutionally deficient. Atway effectively represented Israel throughout the pendency of his case and performed exactly as one would reasonably expect.  Since judicial scrutiny must be "highly deferential" according to Strickland, it is reasonable to conclude that Atway exercised sound strategy in his representation of Israel.  Israel has not, and cannot, show Atway's representation fell below the "objective standard of reasonableness" called for in Strickland.  Israel offers no reasonable showing of precisely how he was prejudiced, i.e., that there is a reasonable probability the outcome would have been different.  This Court should deny Israel's claim of ineffective assistance of counsel.

20

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Israel's Motion under 28 U.S.C. § 2255 without an evidentiary hearing, as the files and records of this Court establish that Israel is not entitled to any relief.  See <u>Valentine v. United States</u>, 488 F.3d 325, 333 (6th Cir. 2007) (no evidentiary hearing required where "record conclusively shows that the petitioner is entitled to no relief") (quoting <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999)); <u>Ross v. United States</u>, 339 F.3d 483, 490 (6th Cir. 2003) (quoting <u>Green v. United States</u>, 65 F.3d 546 (6th Cir. 1995)).

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:      s/Carol M. Skutnik
         Carol M. Skutnik (OH: 0059704)
         Brian M. McDonough (OH: 00672954)
         Assistant United States Attorneys
         United States Court House
         801 W. Superior Avenue, Suite 400
         Cleveland, OH 44113
         (216) 622-3785/ (216) 622-3965
         (216) 522-8354 (facsimile)
         Carol.Skutnik@usdoj.gov
         Brian.McDonough@usdoj.gov

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October 2014, a copy of the foregoing Government's Response In Opposition To Petitioner's Motion To Vacate Pursuant To 28 U.S.C.A. § 2255 was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Carol M. Skutnik
Carol M. Skutnik
Assistant United States Attorney